Entered on Docket
December 28, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: December 27, 2012

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>MARYLINE LINARES and<br>MARK JOSEPH LINARES,<br><br>                Debtors.<br>_____<br>EMARD ENGINEERING, a Division of<br>DICK EMARD ELECTRIC, INC., a<br>California corporation,<br><br>                Plaintiff,<br><br>v.<br><br>MARK JOSEPH LINARES, individually<br>and dba ON SHORE CONSTRUCTION AND<br>MECHANICAL, et al.,<br><br>                Defendants.<br>_____<br>MARK JOSEPH LINARES, individually<br>and dba ON SHORE CONSTRUCTION AND<br>MECHANICAL,<br>                Cross-claimant,<br><br>v.<br><br>EMARD ENGINEERING, a Division of<br>DICK EMARD ELECTRIC, INC.; MARIN<br>COUNTY COMMUNITY COLLEGE DISTRICT;<br>TRAVELERS CASUALTY AND SURETY<br>COMPANY OF AMERICA,<br><br>                Cross-defendants. | Bankruptcy Case<br>No. 10-34361DM<br><br>Chapter 13<br><br><br><br>Adversary Proceeding<br>No. 11-3028DM |

MEMORANDUM DECISION AFTER TRIAL

I.   INTRODUCTION

The court conducted a trial on the cross-claims of Maryline Linares and Mark Joseph Linares dba On Shore Construction and Mechanical ("On Shore") against cross-defendant Emard Engineering, a division of Dick Emard Electric Inc. ("Emard") and Travelers Surety and Indemnity Company ("Travelers") on September 17-20, 2012. Appearances were noted on the record. After hearing the evidence and the arguments of counsel, the court took the matter under advisement. As explained below, the court concludes that On Shore breached its subcontract with Emard and is not entitled to any recovery in this cross-action.[1]

II. DISCUSSION[2]

Emard as general contractor was the successful bidder on a public works project for the Marin Community College District ("District") to upgrade the College's Science and Math Central Plan Complex ("Project"). On Shore submitted a bid to furnish and

---

[1] This matter began in state court in an action filed by Emard against Mr. Linares. Later, after Maryline and Mark Joseph Linares filed Chapter 13, Travelers removed the action to this court on February 9, 2011. In the meantime, Mr. and Mrs. Linares have confirmed a Chapter 13 plan. The court assumes that the disposition of the cross-action by On Shore against Emard and Travelers will dispose of all matters in this removed adversary proceeding and that the court will enter a final judgment to that effect. When Travelers filed its Notice of Removal (Dkt. No. 1) it alleged that this was a core proceeding. Neither Emard nor On Shore filed a statement required by Fed. R. Bankr. P. 9027(e)(3), stating whether they agreed that this was a core proceeding, or that it was a non-core proceeding and if so, whether they consented to this court entering a final judgment. Nevertheless, the issue is settled. At a status conference on August 30, 2012, all counsel agreed on the record that this court could enter a final judgment. Thus any right to question that authority has been waived. Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency Inc.),___F. 3d ___, 2012 W.L. 6013836 (9th Cir. December 4, 2012).

[2] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

install various mechanical items and was awarded the bid as the subcontractor for that work. Emard and the District entered into a general contract and Emard and On Shore entered into a subcontract (the "Subcontract") (Exhibit A). In connection with Emard's work for the District on the Project Travelers issued a Payment Bond (Exhibit 7); that bond is the basis on which On Shore has brought this cross-action against Travelers in addition to Emard.

The critical issue for the court to decide is whether On Shore breached the Subcontract, justifying Emard's incurring of off-sets, or whether Emard breached it, entitling On Shore to the net adjusted contract balance plus costs, interest and attorneys' fees. Whether or not On Shore breached depends on whether it caused disruption at the Project, failed to submit proper shop drawings, understaffed its work force, resulting in excessive delays and failure to perform its work diligently, and failure to provide an appropriate work schedule.

The Project was doomed from the start. It was to last only four months but in fact went nearly two years. There were numerous delays attributable to Emard, On Shore, other subcontractors, problems with the site, and other reasons. When On Shore bid the job it was undertaking a more substantial project then it had ever handled before; Emard itself under-bid the job and was no doubt extended beyond its capabilities. The problems that ensued exacerbated the situation for both On Shore and Emard.

Among the problems that persisted at the Project and that caused delays for all were a road that needed to be raised, rocks that needed to be removed, utilities relocated, and asphalt in the

-3-

road that had to be broken. More importantly, the original plan was to dig two trenches, one of which was to contain the piping to be supplied by On Shore and the other to contain other piping to be supplied by Emard or other subcontractors.

Emard made the decision early on to seek and obtain a revision to the general contract to have all of the piping placed in one trench. That necessarily led to delays of an already very tight schedule because On Shore was unable to do some of its work of installation of pipe into the trench. Instead On Shore prefabricated some of that pipe in a small parking area that was already congested. While those delays were being incurred, Emard repeatedly asked On Shore to submit schedules of values setting forth in three week segments the progress it expected to make on its work on the Subcontract. There were also delays in purchasing a chiller to be installed and design changes for the pad on which it was to be mounted. On Shore also needed to request and obtain an authorization to obtain the chiller from a different vendor than originally contemplated. Even when the chiller was acquired, On Shore did not pay for it as required; Emard did.

Throughout the duration of the four months that On Shore was on the Project there were numerous other problems with change orders, some of which affected On Shore's work and were a result of its own delays. Many were caused by Emard. Exhibit 99 sets forth in great detail a long list of change orders that added to the difficulties at the Project but there is no need for the court to make any specific findings regarding those change orders, or the causes that led to them, because the Subcontract remained in existence during the time of those change orders.

Notwithstanding On Shore's scheduling problems and the delays occasioned by the consolidation of two trenches into one and relocation of other utilities, etc., On Shore and Emard continued to coexist at the Project, and the Subcontract remained in place although there was friction between Mark Joseph Linares and Bill Malik, Emard's site manager, over how On Shore was to conduct its work. Notwithstanding those difficulties, Emard did not terminate On Shore although it could have.

The problems escalated by early December, 2008, when On Shore had been repeatedly urged to submit its three week schedules and necessary shop drawings.

Things reached a head by January 12, 2009, when Emard gave On Shore a Notice Of Termination Of Contract (Exhibit III). That notice set forth multiple grounds for termination of the Subcontract, including On Shore's failure to continue diligently with its work; On Shore's failure to submit a proposed schedule and performance of its work causing delays to Emard; On Shore's lack of cooperation on the completion of the scheduled work; On Shore's failure to supply required drawings per the contract documents; On Shore's conduct resulting in the disruptions to the Project necessitating calling the campus police. The Notice of Termination was fully justified. The record is replete with evidence establishes that On Shore was culpable on each of the grounds alleged by Emard. In making that finding the court accepts as credible the report and rebuttal of Jeffery L. Ottesen (Exhibits YYY and MMMM) submitted by Travelers and rejects the

contrary opinion expressed by David Ross (Exhibit 117).[3]

Having determined that On Shore breached the Subcontract, the only issue left is to determine whether Emard and Travelers have established a basis for back charges and off-sets against the adjusted net contract amount claimed by On Shore[4] that would eliminate any quantum meruit recovery by it.

The Subcontract was in the initial amount of $950,000; approved change orders amounted to $39,852.67, for a total adjusted contract price of $989,852.67. Payments were made by Emard to On Shore in the amount of $200,250.

The back charges Emard is entitled to charge to On Shore are as follows:

| Exhibit(s) | Purpose of Back Charge | Amount |
|---|---|---|
| QQ | Laser Repair | $ 393.03 |
| OO | Chiller Unit plus Overhead and Related Profit | $146,216.75 |
| NN | Payments to P&F Distributors for Pipes, Materials, Tools, Equipment Rental, etc. plus Related Overhead and Profit | $ 24,181.64 |
| PP | Pacific Laser Inc. - Labor | $ 108.00 |

---

[3] While not legally relevant to the court's decision, but not to be ignored, On Shore sought review by the District of its termination. That review was unsuccessful.

[4] Because On Shore breached the contract and thus cannot be said to be the prevailing party, it is not entitled to recover costs, interest or attorneys' fees.

Further, On Shore waived any opportunity to seek approval from the District for extra work, delays, stand-by times or other adjustments in its favor. (Exhibits EEEEE and B, p. 49).

-6-

| | | |
|---|---|---|
| 35, 106 | Cal Hydronics | $ 49,226.05 |
| XX | Perma Pipe plus Related Overhead and Profit | $ 29,169.00 |
| XX | R&B Co. plus Related Overhead and Profit | $ 9,247.93 |
| XX | United Rentals plus Related Overhead and Profit | $ 2,185.00 |
| | Total | $260,727.37 |

The parties have referred to credits in Emard's and Travelers' favor as back charges (as set forth above) and as off-sets. The off-sets in turn are broken into three categories, payments made to the subcontractor that replaced On Shore; delay damages suffered by Emard and charged to On Shore; and Emard's cost to complete On Shore's work.

First, Emard replaced On Shore with Schram Construction pursuant to a subcontract in the amount of $297,000. One change order of $22,000 was appropriate, thus entitling Emard to a credit against the net adjusted amount of the On Shore Subcontract in the amount of $319,000[5].

Next, by a preponderance of the evidence Emard and Travelers have demonstrated that On Shore's delays on the job justify an off-set of $53,844 as described by Mr. Otteson in Exhibits YYY and MMMM.

Finally, the court must decide to what extent Emard is entitled to what it called its Back Charge Recapitulation set forth in Exhibit HH. That recapitulation appears to be a

---

[5] The court was not convinced by On Shore's evidence or argument that Emard was determined early on in the relationship to terminate On Shore and that it had lined up Schram Construction Company to replace it all along.

-7-

reconstruction of hours expended by Emard personnel for laborers, operators, operators' premium time, and other related charges, plus equipment rental and other indirect charges. Exhibit HH totals $201,980 but the court does not deem it appropriate to allow all of those charges.

On Shore challenges the hourly rate charged by Emard for the labor hours totaled in the recapitulation. While it questions the charges and points out that Emard apparently back charged another subcontractor at a different rate, it has not adequately shown to what the appropriate rate would be. Thus, the court accepts by the preponderance of the evidence the labor charges imposed by Emard.

There is a somewhat ambiguous charge of $7,566.98 called "compensable production rate" based upon 5% of the total labor hours. Then there is a 15% profit and overhead charge of $25,955.86. These two line items total $33,522.84, and do not appear to be a direct charge but rather in the first case an artificial charge not unlike billing time to bill time, plus the larger amount which appears to duplicate to some extent an overhead item. The court does not believe that these represent legitimate off-sets in full and will allow only 5% of the direct labor cost total as a legitimate overhead charge.

The allowed off-sets for this category are as follows:

| | |
|---|---|
| Labor | $ 76,628.00 |
| Operator | $ 23,316.00 |
| Labor Premium Time | $  7,546.50 |
| Operator Premium Time | $  4,736.00 |
| Compensable Superintendent Hours | $ 13,688.00 |

-8-

| | |
|---|---|
| Estimate Preparation | $ 3,872.00 |
| Compensable Production Rate | $ 0 |
| Total Labor | $129,786.50 |
| Rented Equipment | $ 31,765.00 |
| Delivery Pick-Up | $ 1,200.00 |
| Total Equipment | $ 32,965.00 |
| Bonds and Insurance | $ 2,984.92 |
| Profit and Overhead (5% of Total Labor) | $ 6,489.30 |
| Grand Total | $172,225.72 |

## III. CONCLUSION

To recap, after applying allowed back charges and off-sets, as summarized below, On Shore is not entitled to any recovery from Emard or Travelers:

| | |
|---|---|
| Subcontract | $950,000 |
| Change Orders | $39,852.67 |
| Less Payments | <$200,250.00> |
| Net Adjusted Subcontract | $787,602.67 |
| Allowed Back Charges | <$260,727.37> |
| Schram Subcontract Off-Set | <$297,000> |
| Schram Change Order Off-Set | <$22,000> |
| Delay Damages Off-Set | <$53,844> |
| Allowed Off-Sets | <$172,225.72> |
| Net Owing on Subcontract | <$16,194.42> |

Accordingly, On Shore is not entitled to any recovery and Emard and Travelers are entitled to judgment in their favor, with each side bearing their own costs.

Counsel for Travelers should serve and submit a form of

-9-

Case: 11-03028    Doc# 69    Filed: 12/27/12    Entered: 12/28/12 11:30:51    Page 9 of 11

judgment consistent with this Memorandum Decision and should comply with B.L.R. 9021-1.

\* \* \* END OF MEMORANDUM DECISION \* \* \*

COURT SERVICE LIST

David H. Bartholomew, Esq.
Law Office of David H. Bartholomew
P.O. Box 1297
9000 Leatham Ave.
Fair Oaks, CA 95628

Eben L. Kurtzman, Esq.
Law Offices of Eben L. Kurtzma
1131 Park Ave.
San Jose, CA 95126

David L. Hughes, Esq.
Booth, Mitchel & Strange LLP
701 South Parket St., #6500
P.O. Box 11055
Orange, CA 92856-8155